UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GAYLE E. MONTEZ,

    Plaintiff,

  v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

CASE NO. 3:17-cv-05485-DWC

ORDER AFFIRMING THE
COMMISSIONER'S DECISION TO
DENY BENEFITS

  Plaintiff Gayle E. Montez filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

  After considering the record, the Court concludes the Administrative Law Judge ("ALJ") properly assessed whether Plaintiff could perform past relevant work, the residual functional capacity ("RFC") determination, and Plaintiff's credibility. As the ALJ's decision

finding that Plaintiff not disabled is supported by substantial evidence, the Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

On December 6, 2013, Plaintiff filed applications for SSI and DIB, alleging disability as of December 31, 2012. *See* Dkt. 10, Administrative Record ("AR") 213-219, 220-27, 343. The applications were denied upon initial administrative review and on reconsideration. *See id.* A hearing was held before ALJ Kelly Wilson on August 5, 2015. *See* AR 39-84. In a decision dated February 1, 2016, the ALJ determined Plaintiff to be not disabled. *See* AR 14-38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In the Opening Brief, Plaintiff maintains the ALJ failed to properly assess (1) whether Plaintiff could perform past relevant work, (2) Plaintiff's RFC, and (3) Plaintiff's subjective symptom testimony. Dkt. 12 at 1-2. Plaintiff asks the Court to remand for award of benefits.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

I. **Whether the ALJ Properly Determined Plaintiff Could Perform Past Relevant Work.**

Plaintiff argues the ALJ erred at step four in determining Plaintiff could perform her past relevant work as a dental assistant and deli cutter-slicer. Dkt. 12 at 5-7. Plaintiff contends the vocational expert's ("VE") testimony indicating Plaintiff could perform the deli cutter-slicer job was inconsistent with the Dictionary of Occupational Titles ("DOT"), and the VE failed to justify the inconsistency. *Id.* Defendant concedes error in finding Plaintiff capable of her job as a dental assistant, but argues the error is harmless because Plaintiff could do other past relevant work as a deli cutter-slicer, which is supported by substantial evidence. Dkt. 13 at 3.

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at Step Four to determine whether he or she can do his or her past relevant work, and at Step Five to determine whether he or she can do other work. *Id.* The RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.*

The ALJ has the affirmative responsibility to ask the VE about possible conflicts between her testimony and information in the DOT and its companion publication, the Selected Characteristics of Occupations ("SCO"). *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a VE to support a finding of not disabled, the ALJ is required to elicit a reasonable explanation for any discrepancy with the DOT. *See id.* at *1. The ALJ also must explain in her decision how the discrepancy or conflict was resolved. *See id.* at *4. To be characterized as a discrepancy, however, the conflict must be obvious or

apparent, meaning that the VE's testimony must be at odds with the DOT's listing of duties that are essential, integral, or expected for performing that job. *See Gutierrez v. Colvin,* 844 F.3d 804, 808 (9th Cir. 2016).

Here, in assessing Plaintiff's RFC, the ALJ determined Plaintiff is:

> [L]imited to frequent reaching, handling, and fingering with the bilateral upper extremities. The claimant needs to avoid concentrated exposure to hazards in the workplace such as dangerous moving machinery or unprotected heights. She can perform simple and detailed tasks but would have difficulty performing more complex tasks consistently due to her depressive symptoms.

AR 24. The ALJ then at step four found Plaintiff could perform her past relevant work as a deli cutter-slicer (DOT § 316.684-014) and dental assistant (DOT § 079.361-018), and therefore, is not disabled. AR 31.

The VE testified the performance of the dental assistant job would be precluded by the limitation of difficulty performing complex tasks consistently. AR 79. The VE further testified her testimony was consistent with DOT. AR 83. Based on the VE's testimony, the ALJ concluded Plaintiff retained the ability to perform past relevant work as a dental assistant and deli cutter-slicer. AR 31. As noted above, Defendant concedes error in finding Plaintiff capable of performing her job as a dental assistant. Thus, the Court considers whether the error is harmless.

The DOT describes the duties of a deli cutter-slicer as follows:

> Cuts delicatessen meats and cheeses, using slicing machine, knives, or other cutters: Places meat or cheese on cutting board and cuts slices to designated thickness, using knives or other hand cutters. Positions and clamps meat or cheese on carriage of slicing machine. Adjusts knob to set machine for desired thickness. Presses button to start motor that moves carriage past rotary blade that slices meats and cheeses. Stacks cut pieces on tray or platter, separating portions with paper. May weigh and wrap sliced foods and affix sticker showing price and weight.

DOT § 316.684.014.

The SCO explains the physical and environmental demands of each job listed in the DOT, including whether a job involves proximity to moving mechanical parts. *See* SCO, App. D. (Proximity to moving mechanical parts is defined as: "[e]xposure to possible bodily injury from moving mechanical parts of equipment, tools, or machinery."). The SCO entry for deli cutter-slicer shows exposure to mechanical moving parts is "Not Present – Activity or condition does not exist." 1991 WL 672744.

Here, neither party disputes the plain language of the DOT description for deli cutter-slicer job. Dkt. 12; Dkt. 13; Dkt. 14. Plaintiff argues the deli cutter-slicer job is incompatible with a limitation of work involving dangerous machinery because it requires her to use and work around a slicing machine. Dkt. 12 at 4-6. The Court notes in her reply, Plaintiff raises two new issues. First, Plaintiff argues the dangerousness of a slicing machine has been established by an article from the Department of Labor, Occupational Safety and Health Administration ("OSHA") entitled "Preventing Cuts and Amputations from Food Slicers and Meat Grinders," which discusses the hazards of food slicers and meat grinders. Dkt. 14 at 2. The article provides:

> Food slicers and meat grinders used in food service industries such as grocery stores, restaurants and delicatessens can cause serious cuts and amputations when workers operate, perform maintenance, or clean the machines.

Dkt. 14 at 2 (citing https://www.osha.gov/Publications/OSHA3794.pdf). Second, Plaintiff contends even if the Court finds the "deli slicing machine, knives or other cutters" used by a deli cutter-slicer do not involve exposure to "dangerous moving machinery," the use of a slicing machine, knives and other cutters constitutes "exposure to hazards." Dkt. 14 at 2-3. However, Plaintiff did not raise these issues in her Opening Brief and Defendant has been denied any opportunity to respond to these arguments raised for the first time in Plaintiff's Reply Brief. Thus, Plaintiff has waived such challenge. *Thompson v. Commissioner*, 631 F.2d 642, 649 (9th

1 | Cir. 1980), *cert. denied*, 452 U.S. 961 (1981) ("appellants cannot raise a new issue for the first
2 | time in their reply briefs") (citing *U.S. v. Puchi*, 441 F.2d 697, 703 (9th Cir. 1971), *cert. denied*,
3 | 404 U.S. 853 (1971)); *U.S. v. Levy*, 391 F.3d 1327, 1335 (11th Cir. 2004) ("raise the issue in
4 | your initial brief or risk procedural bar"). Nevertheless, even if the Court considered Plaintiff's
5 | citation to OSHA, OSHA is not a part of the DOT, thus, this cannot be characterized as a
6 | discrepancy. *See Jackson v. Astrue*, 2012 WL 835979, at *2 (C.D. Cal. Mar. 8, 2012) (finding
7 | OSHA is not a part of DOT and as such, the VE was not obligated to explain any inconsistency
8 | with respect to plaintiff's ability to work near conveyor belts). *See Gutierrez*, 844 F.3d at 808
9 | (To be characterized as a discrepancy, the conflict must be obvious or apparent, meaning that the
10 | vocational expert's testimony must be at odds with the DOT's listing of duties that are essential,
11 | integral, or expected for performing that job.). Moreover, the SCO does not indicate that the use
12 | of a slicing machine, knives or cutters constitutes exposure to hazards. 1991 WL 672744
13 | (providing the deli cutter-slicer job does not involve exposure to weather, extreme cold, extreme
14 | heat, wet and/or humid conditions, vibration, atmospheric conditions, moving mechanical parts,
15 | electric shock, high exposed places, radiation, explosives, or toxic caustic chemicals).
16 |      Here, DOT and SCO indicate a deli cutter-slicer job does not involve proximity to
17 | moving mechanical parts, defined as "[e]xposure to possibly bodily injury from moving
18 | mechanical parts of equipment, tools, or machinery," *see* SCO, App. D. While the deli cutter-
19 | slicer job may involve the use of some type of machinery such as a deli slicing machine, the
20 | DOT and SCO have classified such machinery as not dangerous, and therefore, the deli cutter-
21 | slicer job does not necessarily require concentrated exposure to dangerous moving machinery
22 | precluded by Plaintiff's RFC. Thus, the VE's testimony in response to the ALJ's hypothetical
23 | question does not create a material conflict with the DOT and is substantial evidence supporting
24 |

the ALJ's step-four finding. *Cf. Overman v. Astrue,* 546 F.3d 456, 463 (7th Cir. 2008) (per curiam) (noting the clear conflict between a VE's testimony that the claimant could perform work as a hand packager and the ALJ's finding that he must avoid any exposure to extreme heat, a condition that the DOT states exists "frequently" in hand packager jobs).

As Plaintiff fails to demonstrate any conflict between the DOT description of the deli cutter-slicer job and the VE's testimony, the ALJ did not err in finding that Plaintiff could perform the job. *See generally Wester v. Colvin,* 2015 WL 4608139, at *6 (C.D. Cal. July 31, 2015) (noting that the ALJ was entitled to rely on VE's testimony "when [the] DOT description does not, on its face, conflict with the claimant's RFC"); *McBride v. Comm'r of Soc. Sec. Admin.,* 2014 WL 788685, at *8-*9 (E.D. Cal. Feb. 25, 2014) (holding that ALJ justifiably relied on VE's testimony where there was no apparent conflict between the VE's testimony and the DOT).

II. **Whether the ALJ Properly Assessed Plaintiff's RFC.**

Next, Plaintiff contends substantial evidence does not support the RFC finding because: (1) the ALJ rejected almost of the medical evidence and failed to cite to any evidence supporting the conclusion Plaintiff can frequently reach, handle and finger and (2) the hypothetical presented to the vocational expert did not incorporate any head or arm tremors. Dkt. 12 at 7-12.

Even if the ALJ erred when she assessed Plaintiff's RFC, Plaintiff has not shown why such an error is not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'")). The VE testified that *if* the tremors resulted in an occasional ability to reach, handle or finger, Plaintiff could not perform her past relevant work. But, Plaintiff has not cited to any objective evidence in the record establishing she can only occasionally reach, handle, or finger. In fact, as Plaintiff

acknowledges, there is no objective evidence in the record whatsoever indicating Plaintiff's ability to reach, handle and finger is limited in any way. The only evidence in the record related to Plaintiff's hand movements is Dr. Polo's opinion that Plaintiff has a hand tremor. AR 658, 661. However, Dr. Polo did not make any observations or state an opinion related to Plaintiff's ability to reach, handle and finger. *See id.* As a result, Plaintiff fails to offer any explanation nor has she cited to any evidence in the record to establish her inability to frequently reach, handle and finger would impair her ability to function under the limitations included the ALJ's RFC. It is Plaintiff's duty to show her inability to frequently reach, handle, and finger had more than a minimal effect on her ability to perform work duties. As such, any error in the ALJ's assessment of her RFC was harmless. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007); (*Collins v. Astrue,* 2009 WL 112863, at *5 (W.D. Wash. Jan.14, 2009) (error harmless "because there is no medical evidence in the record that plaintiff's headaches caused him any work-related limitations").

**III. Whether the ALJ provided sufficient reasons for discrediting Plaintiff's testimony.**

Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Dkt. 12 at 13-17.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834 (citation omitted). Questions of credibility are solely within the ALJ's control. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580

(9th Cir. 1984). Moreover, the Court may not reverse a credibility determination where the determination is based on contradictory or ambiguous evidence. *Id.* at 579.

Plaintiff testified she is unable to work due to her depression and her tremor. AR 25. Plaintiff testified her tremor has worsened to the point where she cannot use her hands to make a sandwich. AR 25. Plaintiff testified her tremors travel down from her head into her arms and hands and are worse on the left than the right side. *Id.* Plaintiff testified stress increases her tremor. *Id.* With respect to her depression, Plaintiff testified she has difficulty getting out of bed and is unmotivated. *Id.* Plaintiff self-isolates and is easily confused. *Id.*

Regarding her work history, Plaintiff testified she worked at Carl's Jr. part-time, after the alleged onset date. *Id.* However, Plaintiff quit this job because her tremor did not allow her to get up to speed with her co-workers, and she had difficulty pressing buttons. *Id.* Plaintiff testified she babysat for her daughter, watching her five-and-a-half and one-year-old grandchildren. *Id.* Plaintiff testified she did whatever was necessary for the baby, but it was difficult and she had to sit down a lot because she had neck pain and was tired. *Id.*

The ALJ found Plaintiff's impairments could be expected to cause some of her symptoms. AR 26. However, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" because: (1) Plaintiff failed to seek treatment for her tremors for long periods of time; (2) Plaintiff failed to fill a prescription for propranolol as recommended by her neurologist; (3) Plaintiff has experienced significant improvement in her depression symptoms with the use of medication and counseling, and the disabling symptoms reported at the hearing are not consistent with the with the progress notes; (4) Plaintiff's activities of daily living are not consistent with her hearing testimony; and (5) the objective medical evidence indicates Plaintiff's hand tremor is

intermittent, and there have been long stretches of time where Plaintiff did not have any tremor-related complaints. AR 25-26.

### A. Failure to Seek Treatment for Tremors

First, the ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff did not seek treatment for "long periods". AR 25. The ALJ reasoned this suggests Plaintiff's symptoms from her tremors were not significantly affecting her functioning. *Id.*

When assessing a claimant's subjective symptom testimony, an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p at *7 (1996);[1] *see also Mitchell v. Colvin*, 584 Fed. Appx. 309, 314 (9th Cir. 2014) (citing SSR 96-7p) (ALJ erred, in part, by failing to ask plaintiff about "perceived inconsistencies in following recommended treatment" even though the ALJ "relied on those lapses to discredit him").

With respect to the ALJ's finding that Plaintiff failed to seek treatment for "long periods," the record reflects Plaintiff did not seek treatment for her tremors between the alleged onset date of December 2012 and October 2013. *See* AR 489-790. In October 2013, Plaintiff complained about her tremors to her primary care provider, AR 617, and Plaintiff was referred to neurologist, Dr. Kathleen Polo, M.D, AR 657. Plaintiff saw Dr. Polo in June 2014, and Plaintiff was advised to follow up in three months. AR 657. Plaintiff did not see Dr. Polo again until March 2015. AR 661.

---

[1] Although SSR 96-7p was superseded after the ALJ's hearing, the Court applies SSR 96-7p in this case because it was in effect at the time of the ALJ's decision.

1       Plaintiff argues financial constraints limited her ability to seek treatment for her tremors. Dkt. 12 at 14 (citing AR 433, 526, 583, 589). But, the majority of the evidence cited by Plaintiff is not relevant to her treatment for her tremors after the alleged onset date of December 2012. *See* AR 433 (ability to pay for ADHD medication); AR 489 (ability to pay for Wellbutrin prescription); AR 526 (ability to pay for Mysoline in May 2010). However, one portion of the record reflects during a psychological/psychiatric evaluation in January 2014, Plaintiff reported "she has been referred to a specialist for the tremor but has not been able to go until she knows about her medical coverage." AR 583. At the hearing, the ALJ did not question Plaintiff regarding her income or medical insurance. *See* AR 39-84.

      Here, the record indicates Plaintiff was waiting on confirmation of her insurance coverage to seek follow up treatment with Dr. Polo in 2014. AR 583. It appears the issue was ultimately resolved, as Plaintiff did see Dr. Polo in June 2014. AR 658-661. The evidence does not, however, show Plaintiff unable to afford treatment. *See* AR 583; 658, 661. Moreover, there is no evidence in the record as to whether Plaintiff's failure to seek treatment between December 2012 and October 2013, and between June 2014 and March 2015 could be attributed to her waiting for confirmation on insurance coverage. Although the ALJ did not question Plaintiff at the hearing regarding her ability to afford treatment or whether she had insurance coverage, the record lacks enough detail to support Plaintiff's argument. Thus, Plaintiff has not shown there was a good reason for her failure to seek treatment, and thus, the Court concludes the ALJ's finding that Plaintiff failed to seek treatment for long periods supports the credibility determination. *See* SSR 96-7p 1996 SSR LEXIS 4, *21-22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . . and there are no good reasons for this failure").

B.  <u>Failure to Fill Propranolol Prescription</u>

Second, the ALJ discounted Plaintiff's subjective symptom testimony because she failed to fill her propranolol prescription for eight months. AR 25.

The record reflects in June 2014, Dr. Polo recommended Plaintiff try propranolol for her tremors. AR 659. Dr. Polo also recommended Plaintiff check her blood pressure, and Plaintiff could switch medications if she had "any trouble with that." AR 659. Plaintiff did not fill the initial propranolol prescription. AR 661. Eight months later, in March 2015, Plaintiff saw Dr. Polo a second time, and Plaintiff reported she did not want to try propranolol because she was anxious about lowering her blood pressure too much. AR 661. In March 2015 Plaintiff was also advised she would start on a low dose, because the medication could make her blood pressure drop. AR 662. Plaintiff was also advised if she felt light headed or her blood pressure dropped below 100/50, Plaintiff should not take the next dose of medication. AR 662. At the hearing, the ALJ questioned Plaintiff about her failure to fill the propranolol prescription. AR 56-57. Plaintiff testified she did not want to fill the prescription because she was concerned about the effect on her blood pressure. AR 56.

Although an unexplained failure to seek treatment *can* undermine a claimant's credibility, Plaintiff's explanation indicates that her initial reluctance to fill her propranolol prescription was based on her concern for her blood pressure, rather than her lack of severe symptoms. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (indicating that an ALJ may properly consider a claimant's unexplained or inadequately explained failure to seek treatment when assessing credibility). Accordingly, in order for the ALJ to rely on the alleged failure to seek treatment, she had to determine Plaintiff's explanation was inadequate. *See id.*; SSR 96–7p at *7. Although the ALJ questioned Plaintiff at the hearing about her explanation for failing to fill her

propranolol prescription, there is no indication the ALJ considered this explanation in her decision. *See* 20-27. Therefore, the Court finds Plaintiff's noncompliance in filling her prescription for propranolol is not a clear and convincing reason to discount her credibility.

  C. <u>Improvement with Treatment</u>

  Third, the ALJ found Plaintiff's depression improved with medication and counseling. AR 26 (citing generally to AR 689-778 (Office Visits from Community Healthcare) and AR 780-790 (assessment from Comprehensive Life)). The ALJ reasoned Plaintiff's distress was situational, and revolved around having to live with her daughter and son-in-law, and once Plaintiff moved out, her depression improved. AR 26. The ALJ also referenced Plaintiff's report of different expectations regarding childcare. AR 26.

  The record reflects in September 2013, Plaintiff reported she was upset about having to live with her daughter and son-in-law. AR 621. Plaintiff reported she wanted to live independently and work. *Id.* In October 2013, PA-C Danielle Daehnke described Plaintiff's health symptoms as improved and "well-controlled." AR 617. Plaintiff reported she was happy with her medication, and counseling had been helpful. *Id.*

  In September 2014, Plaintiff moved out of her daughter's house and reported continued depressive symptoms, and her primary care provider, Dr. Partha Gonabaram, M.D., increased her dosage of Lexapro. AR 690-694. In November 2014, Plaintiff reported an improvement in her symptoms and stated, "functioning is not difficult at all." *Id.* In May 2015, Plaintiff's depression was noted as "improved," and Plaintiff denied suicidal or homicidal ideation. AR 747. Plaintiff reported she was trying to take care of herself. *Id.*

  However, two months later in July 2015, Plaintiff reported "I feel insignificant and hopeless …. I am stressed easily, tired all the time, not motivated and don't have interest in doing anything." AR 780. Plaintiff reported she struggles to feel motivated to take care of

herself and is irritable, verbally aggressive, and angry. *Id.* She reported crying episodes for no reason and feeling as if she can't stop. *Id.* Plaintiff denied suicidal ideation, but stated there are times when "I wish it were over." AR 782. Plaintiff was diagnosed with major depressive disorder. AR 783. A therapist was scheduled to meet with Plaintiff and develop strategies for coping with her depressive symptoms, and a psychiatrist was scheduled for a medication consultation. AR 784. In August 2015, counseling notes indicate Plaintiff was finding the energy to make to her appointments and taking care of herself. AR 789.

The evidence is ambiguous regarding whether Plaintiff's depression was situational, and whether it improved with treatment and medication. It appears Plaintiff's depression did improve in 2013 and 2014, but worsened in 2015. As the evidence is ambiguous, the Court concludes the ALJ's finding that Plaintiff's depression improved with treatment and medication supports the credibility determination. *See Allen*, 749 F.2d at 579 (court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan, supra,* 169 F.3d at 599, 601) (It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld.").

D. <u>Daily Activities</u>

Fourth, the ALJ found Plaintiff was not entirely credible because she was able to function at a level greater than alleged. AR 25-26. The Ninth Circuit has recognized two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Inconsistencies between symptom allegations and daily activities may act as a

clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ cited to Plaintiff's reports she is able to: (1) work part-time at Carl's Jr and babysit for her young grandchildren; (2) lives independently; (3) play Rock-a-Roke (live karaoke) occasionally; (4) drive; (5) shop; and (6) work regularly with the Division of Vocational Rehabilitation. AR 25-26. Specifically, the ALJ reasoned Plaintiff's reports of working part-time at Carl's Jr. show she had no significant difficulty performing the job, despite complaints of a tremor. AR 25. Further, the ALJ found taking care of young children is exertional work, which Plaintiff performed three days per week, five hours per day, making it "difficult to find that she has significant physical or mental limitations that would prevent performance of lighter exertional work for longer periods." AR 26, 46-48.

Here, the ALJ's reasons are not convincing when reviewing the record as a whole and weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *See Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (explaining that this court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion"). The ALJ did not address the limited nature of Plaintiff's daily activities or determine whether such activities were

transferable to the work place.

The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, ... does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see Reddick*, 157 F.3d at 722. The ALJ did not cite to specific evidence demonstrating Plaintiff drives, shops, or does any other activity on a daily basis. *See* AR 26. The record indicates Plaintiff likes to participate in Rock-a-roke, but does not do this often. AR 780. Moreover, the record shows the ALJ mischaracterized Plaintiff's testimony with respect to her ability to drive. At the hearing, Plaintiff testified she does not drive much anymore because of her tremors. AR 61. Plaintiff testified she takes the bus to doctor's appointments and the grocery store. AR 62. In sum, there is no evidence these activities consume a substantial part of Plaintiff's day, and it is unclear whether these activities are transferrable to a work setting. *Morgan*, 169 F.3d at 600; *Reddick*, 157 F.3d at 722.

Plaintiff testified she worked at Carl's Jr. approximately 20 to 30 hours per week, but her schedule was reduced to four hours per week because she couldn't get up to speed. AR 46-47. The "ALJ may not use [claimant]'s part-time work ... as the sole basis for finding [claimant]'s testimony not credible [.]" *Riggs v. Colvin*, 2015 WL 1476387, at *15 (C.D. Cal. Mar. 31, 2015); *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (mere "fact that a claimant tried to work for a short period of time and, because of his impairments, failed," does not mean "that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment").

ORDER AFFIRMING THE COMMISSIONER'S
DECISION TO DENY BENEFITS - 16

In addition, the fact Plaintiff cared for her grandchildren approximately five hours per day, three days per week does not detract from her credibility. As noted above, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112–13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former ..., can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Indeed, Plaintiff testified she rested often while babysitting, and was not able to make a sandwich. AR 46-48. Plaintiff also testified she had to stop babysitting, in part, because she was not able to do it anymore. *Id.* Thus, this cannot be the basis for an adverse credibility finding. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (finding that, with almost no information in the record about the claimant's childcare activities, "the mere fact that [the claimant] cares for small children does not constitute an adequately specific conflict with her reported limitations").

As such, the ALJ failed to provide a specific, cogent reason supported by substantial evidence for discrediting Plaintiff on the basis that her daily activities were inconsistent with her testimony.

    E.  <u>Objective Medical Evidence</u>

Lastly, the ALJ discounted Plaintiff's subjective symptom testimony because the objective medical evidence indicates Plaintiff's symptoms are intermittent, and not constant.

AR 26. Specifically, the ALJ noted there have been long periods of time where Plaintiff had no tremor-related complaints and two different neurologists examined Plaintiff after the alleged onset date and neither found any objective evidence of worsening of Plaintiff's tremor. *Id.*

Determining a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter*, 166 F.3d at 1297; *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

As discussed above, Plaintiff did not have any tremor-related complaints from December 2012 to October 2013. *See* AR 593-656. However, the record does not support a finding that Plaintiff's tremor was intermittent or that it was not worsening. In March 2015, Dr. Polo indicated "[c]onstant head and vocal tremor," AR 661, which is worsened by action, "particularly holding her hands out or rapid alternating movements." AR 658. Therefore, the Court finds the objective medical evidence is not inconsistent with Plaintiff's subjective symptom testimony, and is not a clear and convincing reason to discount her credibility.

F. <u>Harmless Error</u>

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006). The Court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ

| 1 | provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided

| 2 | valid reasons that were supported by the record." *Id.* (citations omitted).

| 3 |     Here, while the ALJ did err in discrediting Plaintiff based on her findings that Plaintiff's

| 4 | testimony was inconsistent with her failure to fill her propranolol prescription, her daily activities

| 5 | and the objective medical evidence, the ALJ also provided two valid reasons for discrediting

| 6 | Plaintiff. The ALJ's specific, cogent reasons supported by substantial evidence are sufficient to

| 7 | support the ALJ's decision to discredit Plaintiff.  As such, the ALJ's error is harmless. *Molina*,

| 8 | 674 F.3d at 1115; *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

| 9 | 2008) (when ALJ provides specific reasons for discounting claimant's credibility, decision may

| 10 | be upheld even if certain reasons were invalid as long as "remaining reasoning and ultimate

| 11 | credibility determination" were supported by substantial evidence (emphasis omitted)).

## CONCLUSION

Based on the foregoing reasons and the relevant record, the Court hereby finds the ALJ properly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is affirmed pursuant to 42 U.S.C. § 405(g) and this case is dismissed with prejudice.

Dated this 10th day of January, 2018.

_____
David W. Christel
United States Magistrate Judge